The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Be seated. Welcome, everyone, to the Fourth Circuit this morning. Look forward to the arguments in these interesting cases. The first one is Robinson v. Thomas. Mr. Weiss, be pleased to hear from you. Good morning, Your Honors. May it please the Court, my name is David Weiss, representing the petitioners in this case. As Your Honors know, there are both procedural issues that are before the Court, as well as the substantive double jeopardy question of why there's a double jeopardy violation in this case. The way that I plan to proceed this morning is by beginning with the discussion of the procedural questions of exhaustion and younger. But before I get into that, I want to first give just a brief synopsis of what are the key characteristics of the Racial Justice Act, which lead to the conclusion that there is a double jeopardy violation in this instance. The petitioners in this case are two of the only four petitioners who are defendants in North Carolina. Even if we conclude there's a colorable claim on the double jeopardy provision, that doesn't answer the younger abstention question. Well, part of the abstention question is whether there's a substantial claim. The other part of the abstention question, Your Honor, is whether there's an irremediable harm that's ongoing in the State Court. And here, younger does not apply because there's no adequate opportunity for the petitioners to get redressed for this double jeopardy violation in the State Court. Well, let's talk about that for a second. Let's just assume for purposes of argument that we were to affirm the decisions of the District Court with respect to abstention. And so it goes back to the State Trial Court. I'm asking because the parties really didn't address this, but I think it's relevant, particularly under our decision in Nivens. If you were back there, what pretrial procedures would be available to your clients to raise the double jeopardy issues? None, Your Honor, because this question has already been raised and decided by the State Supreme Court. The State took an appeal from the R.J. decision to the State Supreme Court. The petitioners, or the respondents in that instance when we were proceeding in the State Supreme Court, specifically argued to that court that the appeal was not permitted and that a remand, what the State was asking for was a remand for further proceedings under the Racial Justice Act. The petitioners specifically argued to the State Supreme Court. So your position is you could not raise a motion pretrial on the question of double jeopardy, even though the State Supreme Court in both orders directed the trial court to take those issues up? Well, actually what the State Supreme Court ordered was more limited than that. The State Supreme Court remanded for a further proceeding under the Racial Justice Act, so necessarily rejected our contention that the double jeopardy clause prohibited those further proceedings. And then the State Supreme Court went even further than that. Impliedly rejected, right? Yes, that's right, Your Honor. Impliedly rejected. It didn't discuss the issue. It did not discuss the issue. But, of course, Federal courts all the time treat silent rejections. Right. Well, I thought you had already filed motions in the State trial court as protective measures to, and I'm going to be asking the same questions to opposing counsel because I'm, I don't know what the North Carolina law is, but it just seems odd to me that, as I understand your representation, that there is no mechanism under North Carolina statute or rules of court that would permit you to raise pre-trial these questions with respect to double jeopardy. Well, there was a mechanism, and we did avail ourselves of that mechanism. But you could raise it again. I mean, I don't know no lawyer representing these folks would fail to raise it. That's true. I mean, you might get denied, but you do raise the issue and make the motions. That's correct, Your Honor. And what we have done in the State court is we have raised the issue as a matter of preservation. Well, you raised it before, and you'd raise it every step of the way, wouldn't you? That's right. We have raised it every step of the way. But at this point, the North Carolina Supreme Court has impliedly rejected the argument. Right. They had to reject it as a matter of State law. Well, North Carolina courts, the appellate courts, consider double jeopardy as a threshold issue as a matter of constitutional law. North Carolina is the only state in our circuit where we can't ask them to, we can't certify a question to that court. So we can't know for sure as we would in the other states. But I'm not sure that that's what those orders from the State Supreme Court say. And the point for abstention purposes is if there is an adequate avenue before jeopardy attaches for you to raise these questions, our decision in Niven would seem to indicate that there is no irreparable injury at that point because you have the right to raise those issues before trial, or in this case before retrial. So let's just assume that there is an avenue for you to do that, and you can pursue the motions you've already pursued. If you were unsuccessful, is there a provision under North Carolina law that would allow you to take an interlocutory appeal before trial? Yes, there would be, and it would be discretionary on the part of the North Carolina Supreme Court as to whether they would take that appeal. I believe it would be a petition for certiorari to the North Carolina Supreme Court. Would it allow, down there under North Carolina law, a petition for writ of prohibition? I'm not certain, Your Honor. I would have to submit supplemental authority on that. That's what we used to do a lot in West Virginia. If you didn't want to go to trial and you thought you had a legal issue, you petitioned the Supreme Court for prohibition to tell the trial court not to do any more. When you get back down there, what is there to try? Why isn't it just like an ordinary post-conviction relief case? The original sentence is reimposed automatically. Is that what's going to happen? No, Your Honor. There's an ongoing proceeding in the state court right now, the result of which would be the reimposition of a death sentence after our clients have already been acquitted of that sentence under the racial justice act. Isn't there a North Carolina statute that provides to the contrary? I'm sorry? Isn't there a North Carolina statute that provides to the contrary? No, Your Honor. I believe that the exception, so when there's an acquittal for purposes of the double jeopardy clause, that acquittal is untouchable, cannot be reviewed, except in the very narrow circumstance that the U.S. Supreme Court has identified in the Wilson case. That circumstance doesn't apply here because that case only speaks to a situation where the appellate court makes a decision and then there's no further proceeding in the court below. In Wilson, what happened was the appellate court made a decision. You're assuming that that proceeding qualifies as an acquittal under Bullington and the other cases. Well, yes, that's correct, Your Honor, and I can get into that and discuss that. Is that unclear? No, I think that it's clear based upon the decisions of the U.S. Supreme Court that this was an acquittal, and I can discuss that if the court is interested in that issue at this time. In terms of whether there's a further proceeding going on in the state court right now, what the U.S. Supreme Court talks about is a proceeding that involves a risk of a conviction after an acquittal or a risk of a new sentence being imposed after an acquittal, and that's precisely what we have in this case. We have an ongoing proceeding in the state court. We've already had two hearings before the state court. Did you say two hearings? You're talking about one in the Superior Court and one in the Supreme Court? I mean two hearings in the state Superior Court subsequent to the remand from the North Carolina Supreme Court. So hearings are one-day hearings or something, not proceedings. That's correct. Yes, two hearings. But it's really extraordinary for a federal court to get in the middle of a fight that's ongoing in the state court. Well, it is extraordinary. And that's what you're up here wanting us to do, is stop a state court proceeding. And, you know, that's really something that's rarely done. Well, I think what it comes down to, Your Honor, is whether what happened before the RJA judge was an acquittal for purposes of the Double Jeopardy Clause. And it was an acquittal because there are a couple of very well-worn, established criteria that we find in every single case where the Double Jeopardy Clause applies. Counsel, I don't want to overly belabor this point, but before you would get to that decision, I'm looking at the opinions from the North Carolina Supreme Court, and they say, we express no opinion on the merits of Respondent's motions for appropriate relief the trial court should address the constitutional and statutory challenges pertaining to the Act. So I'm just not sure that I follow your argument on an implied rejection of the Double Jeopardy Claims. It looks like to me the state Supreme Court is specifically saying we're not going to decide any of those issues at this point. And for abstention purposes, which is somewhat of a different question than the merits of the Double Jeopardy, if there are pretrial methods in the state court that let you raise these issues, then I'm not sure that you can make the case that you have an extraordinary circumstance with an immediate and irreparable constitutional harm, particularly if you can take an interlocutory appeal, as long as all this happens before trial. Well, I think that one appropriate option that would be available to the court would be to stay the state court proceedings with the exception of a consideration of the Double Jeopardy issue. If the court is concerned that the state courts have not had an adequate opportunity to address that issue, then I think that would be a way of foreclosing any harm, any constitutional harm that the Petitioners would suffer through the ongoing proceedings that the state is pursuing in the state court to impose a death sentence. Well, here's your – if you go back, will you have a right to challenge whether he should receive the death penalty again or get life, or is it just a routine thing? No, absolutely we would have a right to challenge that, but that's the entire point of the fact that there's been an acquittal and that the ongoing proceeding is a Double Jeopardy violation. But the state Supreme Court ruled that the state didn't get a fair trial. Well, that's true, Your Honor, but once there has been an acquittal under the U.S. Supreme Court cases, it doesn't matter whether there's been a legal error that underlies that acquittal, whether it was in Rumsey, for example. It wasn't an acquittal in the traditional sense of the acquittal of the offense. It was an issue of penalty. That's true. It was an acquittal in the Bullington sense. It was an acquittal of the death penalty, and the U.S. – and the court has recognized in Bullington that you can have an acquittal for purposes of a death sentence when it's a trial-like proceeding. Here it was an acquittal. So you're saying they couldn't – you're saying the state of North Carolina couldn't set up a procedure that would authorize an appellate court to review what happened in the state Superior Court. Certainly, that's exactly right, Your Honor. Certainly, the RJ – That's what your position is. I think the state Supreme Court of North Carolina could not ever review a ruling by the trial court under this act that the death penalty wasn't appropriate. Well, only – the way the RJ is set up, only when the defendant prevails under the act. Only when it prevails. But when the defendant prevails at the trial level, that's the end of it, that a statute that permits an appeal would contravene the Double Jeopardy Clause. That's right. That's right, Your Honor. It's the exact same circumstance for a capital sentencing proceeding. Right. That's precisely how capital sentencing works. Well, let me ask you about that, because in the Bullington sense, and whatever the Arizona case was that came shortly after that, the Supreme Court seemed to focus on the fact that these were trials, in a sense, where the burden remained on the state. They had to prove their aggravating circumstances in the absence of mitigating beyond a reasonable doubt, that sort of thing. So you had all the trial-like attributes. And that seemed to be the deciding factor, particularly in Bullington. But here it's a little different. And it may be an acquittal for Bullington purposes, but here this is a proceeding not brought by the state, it's brought by the plaintiffs. And the burden's not on the state, the burden is on them. And the standard is not beyond a reasonable doubt, it's just a preponderance. So I don't think there's ever been a case in this line that had those circumstances that were substantively different from the Bullington-type case. Well, I think what Bullington is about is whether the defendant was acquitted of whatever was necessary to impose the death sentence. The fact that this burden of proof is different in our case is not dispositive. The dispositive question is, is it trial-like? Well, that's going to sort of be the issue of whether or not it's an acquittal for Bullington purposes is going to be the answer to that question. Well, and I think what makes it an acquittal for Bullington purposes is that through the Racial Justice Act, the North Carolina legislature set up this affirmative defense, just like any other affirmative defense that a criminal defendant would have to raise at a trial. So the defendant would initiate that affirmative defense. And under many affirmative defenses that are dispositive, which do lead to acquittals, the defendant actually bears the burden of proof. So in that circumstance, it's no less trial-like simply because the burden is placed on the defendant. It's just a matter of how the trial proceeding is structured, what are the issues that are raised. But what makes it trial-like is the adversarial nature of it, the fact that there are particular burdens of proof involved, that there are evidentiary guidelines that are set out under the Racial Justice Act. So the Court doesn't have any further questions on that. One thing I would like to address is that— Let me ask you something. You're counsel for Mr. Robinson? I'm representing both Mr. Robinson and Mr. Bullington. I'm sorry, I was getting that. But are you counsel for both of them for the purpose of this case, or you're speaking for both of them? I'm counsel for both. Well, I'm speaking for both of them. Mr. Goffin has two additional attorneys who are here today, Mr. Rowe and Mr. Robinson. He's here also, but you were in the Robinson case initially, right? That's correct, Your Honor. And you were speaking for both sides. Here, is there any material difference between their situations here? There's no material difference, no. The double jeopardy argument was exhausted in the same way in both cases, and the violation is the same in both cases. And you and Mr. Goffin's lawyer agree to that. Is that right? Yes, Your Honor. If very quickly I could address briefly, I see my time, my opening time is running out, but the cases that we submitted in our 28-J supplemental authority letter, even if the Court does not conceive of an RJA proceeding as a trial-like proceeding, we would still prevail under the analysis of those insufficiency of the evidence cases. What the habeas courts have said in those cases is that there's an acquittal for purposes of double jeopardy when the federal habeas courts find that the evidence is insufficient to justify a sentence. And it's precisely the same finding in the RJA proceeding. What the RJA judge found is that no reasonable fact finder, under any view of the evidence, could impose a death sentence because of that racial bias finding. And if Your Honors don't have any additional questions, I'll reserve. When they sent that back, did they disqualify the judge that made that ruling? Well, that was a motion. The original RJA ruling was made under a different judge. That judge retired subsequent to that ruling. And then when it went back to the trial court. There was something in the Supreme Court about going back to the chief judge. That's right. Originally it went back to the senior resident judge, and then there was a motion to recuse that judge. It wasn't a motion to recuse the judge. It was a motion to recuse. Made by who? Made by the petitioners or the defendants. Made by you all? That's correct. Okay. That's correct. Was that ruled on? The judge voluntarily decided to step aside, and the case was referred to a different Superior Court judge. Okay. So you're going to have a new judge regardless if it were to go back? Well, we already have a new judge, and the proceeding is ongoing. And that's why we believe there's an irremediable double jeopardy violation. But you have had two hearings, as you said, with a different judge. We have had one hearing with respect to recusal, and then we have had another hearing with respect to whether the death penalty can be reimposed. Okay. And there are further proceedings to be had, if we don't interfere, in the state court in each case. That's exactly right. Are they handled there as consolidated cases, or are they being handled separately, your client and his client? Well, in a sense, they're being handled as consolidated cases. Originally, Well, in a sense, it looks to me like it would be either consolidated or not. Here, you're consolidated, right? Here, we're consolidated. In the state courts, the North Carolina Supreme Court has said the cases should not be joined, that that was an error in the original proceedings. To join them, as a practical matter, has heard all four cases that are proceeding together in the same hearings, giving the attorney for each defendant an opportunity to be heard separately. One more. After the remand back from the state Supreme Court, there was a recusal motion. That satisfied. What was the other motion? You said there's been another motion that's been heard. Yes, that's right. So there's been a subsequent to that. There was another motion that involved whether the legislature's repeal of the Racial Justice Act could allow the Superior Court judge to then conduct a proceeding to reimpose a death sentence. Has that been ruled on yet? No, the state judge has taken that under advisement. Okay. This is all in Cumberland County? Yes, yes, Your Honor. Both cases? Yes. I'd like to reserve the remainder of my time. No, you're fine. If we ask questions, we're not going to charge against you. Thank you, Your Honor. Mr. Elder, Ms. Elder, I'm sorry. I apologize. Good to have you here. If you don't mind addressing the same questions I ask opposing counsel to begin with, if we were to affirm the district courts and say that they were correct on abstention, and this goes back, what can the plaintiffs do pretrial to raise their double jeopardy issues? They can and have raised double jeopardy before the state Superior Court. Today they couch it as a preservation issue, but they have raised the issue of double jeopardy before the state Superior Court, which has taken the matters under advisement. We have had a hearing, non-evidentiary hearing, on November 29th before the Superior Court. So the court has before it petitioner's claim of double jeopardy. All right. Are you saying there's a preservation issue here? They claim that it's a preservation issue, but they have argued, they have briefed and argued the issue of double jeopardy before the state Superior Court. This is an ongoing proceeding. Right, but I thought you said there was a preservation issue. You're absolutely correct, Judge. They originally raised it as a preservation issue. We cited that in our brief. Since that time, we have had a judge who's been appointed to hear these matters in the Cumberland County Superior Court, and they have briefed the issue of double jeopardy. They have argued the issue of double jeopardy before the state court. This is an ongoing proceeding. All right. Well, let me ask you this. Have you raised as a defense in that proceeding an argument that they cannot raise the double jeopardy? No, Your Honor. We have not. No, we have not. And will you represent to this court that you will not raise that as a defense, that they're barred by some reading of the North Carolina Supreme Court's order? No, Your Honor. We have said all along that they have the ability and should raise any double jeopardy argument. Or any constitutional issue. Any constitutional argument. They can raise any issue under the United States Constitution that they want to raise. Absolutely. And litigate it in the state court. Absolutely. And, in fact, the state court should have the first opportunity to make that determination, especially considering the spin that petitioners have put on the Racial Justice Act. The Racial Justice Act, in fact, is not a trial. It is a post-conviction hearing. Before you get into that. Yes, Your Honor. Let's follow that thread a little bit farther. So you go back, let's assume you're back in state superior court, have a hearing on the issue of whether the double jeopardy provision attaches here, and the plaintiffs lose. The state trial court rules against them. So, at that point, before a trial, what interlocutory appeal right would they have? The petitioners would have the same opportunity that was identified in the Nivens case, which is they can seek further discretionary review before the North Carolina Supreme Court about that issue. So does that go to the North Carolina Supreme Court or the North Carolina Court of Appeals? It would go to the North Carolina Supreme Court. Bypass the Court of Appeals because it's a potential death penalty case? It is currently a death penalty case. It is not potentially. It's currently a death penalty case, and that means they can go directly to the Supreme Court of North Carolina. That's correct, and raise their petition for writ of cert there. We are not awaiting resentencing. We are not awaiting a retrial. This is a post-conviction allegation, just like any other post-conviction allegation that could be raised. The lower court, the superior court, conducted an evidentiary hearing, just as it would have for, say, an ineffective assistance of counsel claim. Petitioners have couched this as being some sort of acquittal of the death penalty, but, in fact, it was not. Is this characterized as a MAR proceeding? It is. It absolutely is, and the Racial Justice Act refers to that. In 15A, 2012. Has this Racial Justice Act been repealed? It has, Your Honor. But the Racial Justice Act itself referred to the post-conviction statute, and, in fact, said you can raise a Racial Justice Act either at a preliminary, a pretrial hearing, what we call a Rule 24 hearing, or you can raise it in post-conviction. Petitioners raised it in post-conviction, and the court conducted an evidentiary hearing on that issue. But, relevantly, the Racial Justice Act refers to the post-conviction statute. So it's straight up a post-conviction claim. So it's your position, when I ask the question, that they are still under a death sentence now. They are. They are under a death sentence now. Have they ever been out from under a death sentence? They momentarily gained relief. That is correct. The North Carolina Supreme Court. And that's the predicate for their double jeopardy claim. That's what they claim is their predicate. That's their claim. That's what I call the claim. Absolutely. That's their claim, that they at one point were out from under it, and then it was, and you're saying it was reinstated by the Supreme Court of North Carolina. In vacating the unfair proceeding, yes. And the cause is that the state didn't get a fair trial. That's right. You should have had a continuance or something. That's right. Right. Right. You won the appeal. You took an appeal, won it, and it's back. Right. And Satizan is instructive on this, because Satizan specifically said it's not the mere imposition. Was the disposition in the North Carolina Supreme Court, and I expect I have it here somewhere, but was that to vacate and remand? That's correct. Okay. That's right. Satizan is instructive on this point. Who's instructive? Satizan. The United States Supreme Court case of Satizan, I may be mispronouncing that, is instructive on this point in that the United States Supreme Court said it is not the mere imposition of a life sentence that triggers a double jeopardy concern. In fact, they distinguished the Scott case and said that what we're dealing with is It wasn't Satizan, a hung jury or something like that. It was. They really didn't have a decision. And in this case, whatever its value, there was a decision. That's correct. But what we're dealing with with the Racial Justice Act is a trial court error. It is not an acquittal of the eligibility for the death penalty. The eligibility for the death penalty in North Carolina is predicated upon findings related to the aggravating circumstances, which the juries in the petitioner's case have already long since found. And nothing has shaken those decisions at all. The Racial Justice Act doesn't apply to any of the aggravating circumstances or the guilt or innocence of the petitioners at all. This statute, rather, is a trial court error identified and provides a remedy or you might even say a sanction against the state to prevent the state from proceeding capitally or in the post-conviction context, it would be a remedy to correct that trial court error to then allow for a life imprisonment sentence. But it does not work the same way as all of our United States Supreme Court cases have identified for acquittal purposes. You're saying it's not an acquittal. It is absolutely not an acquittal. But they were never acquitted, and that's where you all part company. At least that's the main place you part company. They say it's an acquittal. You all say it's not an acquittal. That's correct. And it hasn't been fully litigated in the state court. That's right. And it's not just me, Your Honor. Sadazan goes on to distinguish the Scott case and says, you know, what we're talking about when we're talking about an acquittal is a jury finding an aggravating circumstance that then elevates the murder beyond a first-degree murder to make someone eligible for the death penalty, that being the capital nature of it. That simply is not what we're dealing with with the RJA. So when we talk about a retrial, there is no such thing in what we're talking about here. It is not a retrial at all. It has been remanded for further proceedings related to their motion for appropriate relief, just as any other motion for appropriate relief would come before the Superior Court. And back to Judge Agee's point, this is exactly why this court should not intervene, why the district court did not abuse its discretion in abstaining from intervening to the state court, for the very point that there are ongoing state court remedies and ability for them to raise these very claims before them. It's not enough that they come before the court and say we have a colorable claim. Now, of course, we've gone on to argue that there is no double jeopardy violation. But the point of the matter is the state court is reviewing this currently. And, in fact, if there are adverse rulings to the petitioners, they may, in fact, be before you again on this very issue of double jeopardy. But now is not the appropriate time since the state courts have not had the opportunity to weigh in. What happens in the state court? I don't know how they operate at the trial level in North Carolina. Is there any reasonable likelihood that proceedings would commence, seems like there might have been some additional discovery, the appointment of an expert, where there would be proceedings that aren't simply pleas and bar and that sort of a thing, that that could occur before the state superior court resolves the double jeopardy issue? I suppose it is possible, Your Honor. He's taken he's had legal argument on all these issues and has taken that under advisement. We don't yet have a ruling. So I guess it's possible that the court would go on perhaps ruling on some of those legal issues, but not all of them, and go on to conduct discovery or appointment of experts. Are you talking about the re-ban proceedings? I am, Your Honor. But, nonetheless, for the very point that we've already made, since this isn't an acquittal, this is merely a post-conviction hearing where evidence was taken, of course, we're arguing that. But for abstention purposes, I don't think we have to decide the merits of is it an acquittal or is it not, because that's what will be decided when you go back. That's why the availability of pretrial procedures, to me, seems to be the crux of the abstention issue. That's exactly right, Your Honor. You do not have to solve that issue today or resolve that issue today. We have argued it before you. It is relevant in the sense that the lower court, the district court, found that the resolution of it was far from clear to the benefit of the petitioners. And that weighed in in the determination that the district court made, that it's far from clear that they would actually win on the issue of double jeopardy. So in that regard, we have argued it before you. And as I mentioned before, it may come before you at a later juncture, depending upon the rulings in the state court as they wind their way through state and federal post-conviction review. Here, obviously, there are ongoing state court proceedings that provide for an opportunity for them to raise these claims, and they have. If we affirm the state court, the federal court, the district court, the district court proceedings remain pending? It's a younger abstention. Right. The district court sustained. That's right. I don't think that they retain jurisdiction in an abstention. I could be wrong about that, but I don't believe that they – I'm asking you. Right. I'm not saying what it is I'm asking. Right. I think that they don't retain – They're abstaining, and the younger abstention, it's abstaining. Right. It's different than a dismissal. That's correct, although they did find as an alternative ruling that they had failed to exhaust in the state court. But I think the abstention goes to the jurisdiction of the court, and I believe that they are therefore not retaining – The orders say they dismiss without prejudice. Correct. They're free to bring actions again. Absolutely. I'm sorry, I may have missed the implication of your question. I want to make sure that they can go back. You're not going to interpose some procedural bar if they try to go back. That's correct. If we were to say younger abstention is appropriate. That's correct, Your Honor. Because they're ongoing proceedings. I took your question to mean would it remain pending in the district court? Well, I didn't – I don't know if I used those words. I may have. That's sort of what I was getting at. Right, and I don't believe – To see what your position was. Right. I'm trying to see what your position was. State's position, not yours, the state of North Carolina's position. Correct. I don't believe that they remain pending, as Judge Avery said. I think that they are free to bring them again because it was dismissed without prejudice. There's no bar. There's no bar to them being brought again. That this is the first and only proceeding under the Racial Justice Act. That's correct in terms of the evidentiary hearing. We have since had other cases where the RJA claims have been dismissed based upon the repeal of the RJA. And those matters are winding their way through the state post-conviction review process as well. They're currently before the North Carolina Supreme Court on review. Is there any distinction, material or otherwise, procedurally between these two petitioners? Not between these two petitioners, no, Your Honor. Okay. Do you agree with your colleagues there on the other side on that point? On this very narrow point, yes, Your Honor, I do. On that point. Well, I want to make sure everybody agrees on that point. Right, yes, Your Honor. There's no immediate and irreparable harm that's been identified here. They've attempted to claim that cost and anxiety or insecurity about the death penalty is something that should cause the court's intervention. And yet, you're well aware that the case law is specific that that is incidental to any criminal prosecution that is brought in good faith. And that's certainly been done here. Plus, the petitioners in this case for decades were on death row. And additionally, there are no pending execution dates for anyone in the state of North Carolina. Now, the alternative sentence to their death penalty judgments is life in prison. Without parole, yes. That's what I was going to ask. In North Carolina, does that mean life without parole? Under the Racial Justice Act. Is anybody ever eligible for parole under the life sentence that they would have if the death penalty goes away? Under the Racial Justice Act, the appointed remedy is life without parole. That's correct. Life without parole. That's what I was getting at. I mean, I come from a state that doesn't have the death penalty. But we do have life without parole. And that would be the alternative. That's what they're after. They absolutely are after life without parole. But relevant to the issue that's before this court, the lower court, the state superior court, was not choosing between two different sentences. He was merely taking the procedural argument that was being made to them regarding trial court error, applying the facts to the law, and then ruled in their favor and applied what the statute afforded was the appropriate sentence. So he wasn't actually weighing, as is in the traditional sense of weighing, aggravating or mitigating circumstances, which would lend credence to the accrual argument. Well, it's like almost a conclusive mitigating circumstance, it seems like. Well, I don't know that I would term it as that, Your Honor. It's trial court error, again, that's identified and that the legislature has set a framework for addressing a trial court error and then has given that remedy of if this is proven, then this is what the court has to impose. There are no other options. There's no other discretion for the court. You had also raised the procedural bar argument that the plaintiffs had failed to raise their double jeopardy claims at an appropriate time earlier. Are you still maintaining that argument? They didn't put it in their petitions for certiorari or something along that line? We raised it in the context, Your Honor, of they have not exhausted the claim through the state superior court and then into the North Carolina Supreme Court, that they raised it for the first time in responsive pleadings before the North Carolina Supreme Court. That was the first time to raise it? That was the first time that they raised it. That was the first time. It seemed to me like that position is specious for you to raise. I thought you'd given that up earlier, that there's no procedural bar. There is no procedural bar when it goes back to the state superior court for them to raise it. What I raised it in the context of your briefing before you was that, in fact, they have not exhausted it. You may be helping them here. Well, I certainly hope not. Well, you might with me. If you say that there's some bar to it now. No, Your Honor, I'm not saying that. They have every right and have taken advantage of that right to raise it before the superior court. What I'm countering, their argument is When you're back in superior court, you're not going to raise that as a plea in bar. That's correct, and we have not. It's currently pending before the superior court. My question is, if you're right that they are still under a death sentence, what is there to try? Well, that's a good point, Your Honor. The only thing that there is to try is their motion for appropriate relief under the Racial Justice Act. If there was no other reason that they could be If there was any bar to them maintaining those death sentences, then there would be no point for the North Carolina Supreme Court to have remanded it on their motion for appropriate relief. We're proceeding on their motions for appropriate relief. Well, did you make that argument to the superior court that there's really nothing to try because they're under a death sentence now? No, Your Honor. We have not made that because it's their motion for appropriate relief where they're trying to avoid the death penalty. So they would be making that argument that double jeopardy prevents it. There's nothing left for the court to do because double jeopardy prevents the court from reimposing the death penalty. But that's not our position. Well, let me ask you just to make sure to clean this up. The district court orders had an alternative grounds, which granted this motion to dismiss, your motion to dismiss, for failure to exhaust available remedies. Take it from your answers to our earlier questions that you would agree that that portion of the district court's order is invalid. No, Your Honor. I think our position is that they did not exhaust in the state's highest court. They have not fully argued these cases through state post-conviction as they are required to do. So they have now filed before the state superior court and are litigating their claims there. So the exhaustion is that they haven't taken these claims all the way to the state supreme court as opposed to they filed too late before. May I briefly respond, Your Honor? I'm out of time. You go ahead and answer all the questions that you're asked here. Don't you worry about that red light. Thank you, Your Honor. Yes, that is correct. They raised it for the first time before the North Carolina Supreme Court. And our argument there and consistently here is they have an opportunity to raise it on remand. This is an ongoing proceeding. That's the appropriate place they should raise it. And then carry it all the way to the North Carolina Supreme Court if there's an adverse ruling. So your answer to Judge Agee is that that aspect of the district court, the dismissal aspect of it, is moot or invalid? You're only here wanting us to sustain this on younger abstention. No, Your Honor. We believe that they did not exhaust in the court below. But they couldn't have asked about it until they went to the Supreme Court. That was the first time that double jeopardy could have come up when they went to the Supreme Court. And they raised it up there in the Supreme Court. So then it got sent back. But our argument is it wasn't even right until the Supreme Court had granted the state's petition for writ of cert and vacated and remanded the lower order. Then their claim that they're now being placed in double jeopardy. Otherwise, if they had won in the North Carolina Supreme Court, we wouldn't even be here. So that's when it became relevant. And so our argument has consistently been they need to raise it back in the state superior court. And you said they are raising it. It's being litigated right now. They are indeed, Your Honor. Thank you. With no other questions, we would ask you to affirm. Thank you so much. Thank you. Mr. Wise? Thank you, Your Honor. I'd like to come back and go through the reasons why younger abstention is not appropriate here, why this issue was decided in the North Carolina Supreme Court, why the state trial court below has no authority at this point to address the issue. First, as a factual matter, it's true we have re-raised the issue in the state trial court below. So is this the argument you're going to make in the superior court in North Carolina, that the court has no authority, no jurisdiction to even decide the issue? We have already made the argument in the state trial court that this issue has been decided, and we will supplement the record to show the court that we preserved it. It was impliedly decided. That it was impliedly decided. But notwithstanding what the language of the Supreme Court order or opinion that Judge Agee read to you. Well, let me, I want to come back. They referred to the constitutional issue. I think that language is very important, so I want to come back to that and discuss it right now. It's at page 511 of the joint appendix. And what that language says, first of all, in the context of that decision, the petitioner was the state of North Carolina, because the defendants were the prevailing parties below, and the state petitioned for review in the state Supreme Court. So what the North Carolina Supreme Court said is on remand, the trial court should address petitioners, so the state of North Carolina's constitutional and statutory challenges pertaining to the act. North Carolina Supreme Court did not remand for consideration of the defenses that the respondent or the defendant. That's what they meant by petitioners. They could have been talking about you. Respectfully, Your Honor, they were not talking about us. The petitioners in that case, and I think if you look at the court's, if you look at the court's order, I mean, the caption of the order refers to the state of North Carolina as the petitioner. The state is the petitioner. They're the ones who petitioned for review. What are you in the Cumberland County Court? Well, in the Cumberland County Court were the defendants before the North Carolina Supreme Court. You were the defendant? I thought you were the petitioner. Aren't you the petitioner? Well, we're the moving party. You're the moving party. That's what it sounds like, petitioner. But when we were in the North Carolina Supreme Court, there's no question that the state of North Carolina They were the ones who petitioned for review. That's exactly right. But going back to the lower court, in the lower court, you're the petitioner. No, in North Carolina Or the moving, whichever you want to call it. That's true, but in the North Carolina courts, the party moving for relief in the trial court is not referred to as the petitioner. I've not seen that done. It's generally referred to as the defendant in a proceeding that's been had in this case. I'm not understanding your first answer. Are you saying that you're going to tell the Superior Court in North Carolina that you cannot decide our argument on the double jeopardy issue? We've already told them that, and we can supplement the record to show that. We've raised the issue for preservation purposes. I want to come back again to the language But you don't want them to rule on the double jeopardy issue. Well, we would if they could, but they cannot because the North Carolina Supreme Court has impliedly rejected it. You're not going to argue to them in the alternative? I mean, to me, that just seems like a stunning position. Well, we've taken the position that if there is a ruling to the contrary, they might be wrong. They might be wrong. That's true, and that's why we have preserved the issue. Why wouldn't you do exactly what Judge Agee said? I'm sorry, your Honor? Well, the way that we framed it to the court I mean, if they mean petitioners, that's you. And I want to come back to the language That might be a reasonable reading of it. Well, respectfully, I don't think it is. On page 511, if we look at the first paragraph there, it says, We express no opinion on the merits of Respondent's Motion for Appropriate Relief. So clearly, in the context of this order, they're saying Respondent's Motion for Appropriate Relief. They're referring to the defendants. And so in the next sentence, when they say petitioner, the State Supreme Court was clearly referring to the State of North Carolina. Because the issue Did they put an apostrophe in there? That's a good point, your Honor. Petitioners, the apostrophe is between the R and the S. So it's singular. Well, let me ask you this. We've just heard the counsel for the State of North Carolina say several times here that they're not going to make an argument in the Superior Court as a plea in bar or whatever you all call it down there that you cannot raise the double jeopardy argument now. I mean, I'm just dumbfounded that they take a position that's favorable to you that you seem to reject. Well, the reason to reject it is because the law is clear. There's a statute in North Carolina, 15A.14.19, which says that once an issue has been raised and decided by the State Supreme Court, it can't be raised in a subsequent proceeding. If it's even decided by the Supreme Court impliedly, it's been rejected. That's right. Why would you say it hadn't been decided and get the Cumberland County Court to rule it that you win? Well, because we believe that the Try to get a favorable ruling. We believe that it's race judicata. You'd be better off waving a favorable ruling around than having none at all. Well, we believe it's race judicata because what we specifically argued to the State Supreme Court was that a further proceeding under the Racial Justice Act would violate double jeopardy. And in the North Carolina Supreme Court, not only did they You don't have a court ruling to that effect. That's what you say. That's what you're saying. They say they don't have the objection to you arguing that and getting a ruling on that. Well, we would have no objection to the court staying the state court proceedings except to the extent that the state court We don't much mind staying state court proceedings. I understand that, Your Honor. But the courts don't like doing that. I understand that, Your Honor. But the challenge is that if there's no stay in place, then the state court proceeding is ongoing. The state's prosecution, the state's attempts There's a statute about that, isn't there? The Anti-Injunction Act or something? 2201? I'm sorry, Your Honor? There's a federal statute about federal courts getting in the business of state courts. The bar is to be done except in the exceptional circumstances, which you say you got here. The Double Jeopardy Clause, that's exactly right. But you haven't got the ruling that you got that here. You say it. You say you got double jeopardy, but you don't have a ruling to that effect. If I were you, I'd try to find a ruling. Well, I think under Harrington v. Ricker, But you're not going to do what you want to do. There's been an implicit ruling. I want to briefly address the point about whether there's a death sentence in place because I think that's important. That also goes to the question why it's important for this court to get involved at this point. Because the petitioners don't have any sentence. They're currently in custody under an indeterminate sentence in state proceedings. There was a death sentence. I know you want to go there, which is fine. But have you asked the state superior court to stay any other further proceedings until they decide this double jeopardy issue? So there's no, I don't know whether you did discovery or whatnot. Have you asked them to stay? Well, that's a good question, Your Honor. We had actually asked, in addition to asking the North Carolina Supreme Court to decide the double jeopardy question, we had filed a motion with the state supreme court to stay the state proceedings specifically so we could take this issue because it had been decided to take it into federal court for federal review. That motion was denied. All right. Well, have you asked the state superior court that you're in now to stay anything else until they figure this double jeopardy thing out? We have asked for a stay in state superior court on other grounds. We have not asked for a stay. The answer is that's no. Correct. You have not. In the state trial court. That's right, Your Honor. If you end up going back, that might be a motion you'd want to consider. Yes, Your Honor. We may consider that. So turning back to why there's no death sentence in place, I think it's important to clarify that there was an initial death sentence that was handed down in the petitioner's original trials. That death sentence was vacated as a result of the RJA proceeding. The RJA judge then imposed a life sentence, issued a judgment imposing a life sentence. Then the North Carolina Supreme Court vacated the RJA judge's ruling. And judgment. Vacated. Did not vacate the judgment. Didn't vacate the judgment. But vacated the order imposing a life sentence. So in the North Carolina Supreme Court, and we talked about this in our briefs, but the North Carolina Supreme Court did not remand for re-imposition of sentences. In the cases that the state cites, that's what the North Carolina appellate courts did because only trial courts impose sentences. There's no automatic re-imposition of sentences. And here there hasn't been any re-imposition of a sentence. And if the court doesn't have any further questions. Thank you very much. Thank you, Your Honors. We appreciate y'all's work. We'll come down and greet counsel and then call the next case. But before I do that, I want to thank you all, the court-appointed lawyers, for these petitioners here for your good work. And thanks to the state of North Carolina for its good work too. We'll come down and greet counsel and then we'll go to the next case.
judges: Robert B. King, G. Steven Agee, Henry F. Floyd